THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MOHAMMED ZAFARANCHI,<br><br>　　　　　　Defendant. | CASE NO. CR22-0122-JCC-1<br><br>ORDER |

This matter comes before the Court on Defendant's pretrial motions, namely two motions to dismiss (Dkt. Nos. 74, 78), two discovery motions (Dkt. Nos. 75, 77), a motion to strike the Government's expert (Dkt. No. 76), and a motion for a *Franks*[1] hearing (Dkt. No. 81)[2]. Having thoroughly considered the briefing and the relevant record, and finding oral argument unnecessary, the Court DENIES each motion except as noted below and explained herein.

I.    **BACKGROUND**

From 2016 to 2018, according to the indictment, Defendant conspired to operate a

---

[1] *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (evidentiary hearing regarding statements made in support of a search warrant).

[2] Docket Number 81 contains the unredacted sealed version of this motion. (*See* Dkt. No. 86) (order granting motion to seal). The unsealed redacted version of this motion is available at Docket Number 79. Any pin cite to Docket Number 81 constitutes a similar pin cite to Docket Number 79.

ORDER
CR22-0122-JCC-1
PAGE - 1

Washington-based home mortgage modification call center (of different names). (*See* Dkt. No. 1 at 2–4.) The call center allegedly misrepresented the services it would or could provide, the manner it would be compensated, and what results, if any, a borrower could reasonably expect. (*Id.* at 4–5.) Based on the center's solicitations, homeowners throughout the country allegedly paid for dubious modification services. (*Id.* at 5–7.) At Defendant's direction and under allegedly false pretenses (with the possible assistance of others), Defendant engaged in transactions to conceal the true source of these funds. (*Id.* at 7–14.) Then, in 2018, once Defendant learned of a criminal investigation into the call center, Defendant (with the possible assistance of others) allegedly destroyed e-mails, documents, and other records pertaining to this activity. (*Id.* at 13–14.)

Defendant is charged with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 2–6), money laundering (Counts 7–11), and destruction of records in a federal investigation (Counts 12–13). (*See generally id.*). Trial is scheduled for February 24, 2025. (*See* Dkt. No. 85.) Defendant submitted pretrial motions seeking a range of remedies, including dismissal of this action, a pretrial evidentiary hearing, the exclusion of certain evidence at trial, and the Government's production of other evidence. The Court addresses each, in turn, below.

II.     **DISCUSSION**

   A.     **Motions to Dismiss (Dkt. Nos. 74, 78)**

These motions raise separate and distinct grounds for dismissal: (1) the indictment's references to other (uncharged) conspiracies and (2) a delay in prosecution.

   1.     <u>Dkt. No. 74 – Motion to Dismiss Due to Multiple Alleged Conspiracies</u>

Count 1 of the indictment relates to Defendant's alleged involvement in a conspiracy associated with an Everett, Washington-based call center. (*See* Dkt. No. 1 at 3–10.) But the overview section describes Defendant's involvement in a preexisting conspiracy associated with a California call center. (*See id.* at 1–2.) The indictment also contains various allegations linking the activities of these two call centers. (*See id.* at 3–10.)

In moving to dismiss, Defendant argues that, by including allegations relating to a conspiracy involving a separate California call center, the indictment improperly attempts to prove multiple conspiracies, when, in fact, only a single conspiracy is charged. (Dkt. No. 74 at 2–4.) This, says Defendant, is a due process and fair trial violation because allegations and evidence associated with the California conspiracy may result in the presentation of prejudicial "spillover"[3] evidence in this matter. (*Id.*) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 769 (1946)). But as the Government aptly points out, what is relevant is the *charged conduct*. (*See* Dkt. No. 93 at 3–5) (citing Dkt. No. 1 at 3–10.) And to the extent *that* portion of the indictment includes references to the California call center, it is *res gestae*[4] evidence, *i.e.*, needed context for the finder of fact. (*Id.*) (citing *U.S. v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016)).

To note: if Defendant seeks to raise Rule 403 or Rule 404(b) objections regarding the Government's presentation of evidence associated with the California call center *at trial*, he may still do so—but only contemporaneous to the Government's attempt to introduce the evidence, not now. The Court declines to make prospective Rule 403 and 404(b) rulings. *See* Fed. R. Evid. 403, 404(b).

    2.  <u>Dkt. No. 78 – Motion to Dismiss Due to Delay in Prosecution</u>

It is uncontested that a criminal investigation relating to Defendant's Washington conduct began at least as early as March 2018. (*Compare* Dkt. No. 78 at 2, *with* Dkt. No. 87 at 3.) Yet he was not charged until August 2022. (*See generally* Dkt. No. 1.) In moving to dismiss, Defendant asserts this is an unreasonable delay of constitutional magnitude. (*See generally* Dkt. No. 78.) To succeed, Defendant must show (1) that he suffered actual "non-speculative prejudice"[5] and (2)

---

[3] *See U.S. v. Anguiano*, 873 F.2d 1314, 1318 (9th Cir. 1989) (spillover evidence is that which transfers or spills over the impression of guilt from uncharged to charged conduct).

[4] *See U.S. v. Chischilly*, 30 F.3d 1144, 1161 n.32 (9th Cir. 1994), *abrogated on other grounds by U.S. v. Preston*, 751 F.3d 1008 (9th Cir. 2014) (*res gestea* conduct is inextricably linked to other acts or conduct).

[5] This includes "proof that demonstrates exactly how the [resulting] loss of evidence or witnesses [i]s prejudicial." *U.S. v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005).

that the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Barken*, 412 F.3d at 1135. Defendant establishes neither.

As to prejudice, Defendant relies primarily on the loss of testimony from individuals who benefitted from Defendant's services yet are no longer available to testify. (*See* Dkt. Nos. 78 at 6, 69 at 2) (citing Dkt. No. 78-1 at 2–6). But the Court strains to understand how this evidence is exculpatory as to the indictment's specific and separate allegations of unlawful conduct. The call center may have concurrently engaged in lawful and unlawful activity—one does not negate the other. (*See generally* Dkt. No. 1.) Nor is it clear why this testimony is needed to prove certain benefits were conferred anyway. The Washington call center's business records (presumably within Defendant's custody and/or control—to the extent he did not destroy them[6]) should contain this information and could be presented at trial. And finally, as outlined by the Government, (*see* Dkt. No. 87 at 7–11), the declaration Defendant provides to the Court in support (Dkt. No. 78-1) raises more questions than it answers regarding the efforts undertaken to contact these individuals and whether they are adequate for purposes of the instant motion. For these reasons, Defendant fails to establish the first *Barken* prong. *See* 412 F.3d at 1134.

As to a violation of justice, *i.e.*, the second *Barken* prong, Defendant points out that four years elapsed between the execution of the Federal Bureau of Investigation's ("FBI") search of the business and the indictment. (*See* Dkt. No. 99 at 3.) He further notes that a co-conspirator offered a detailed proffer more than two years prior to the indictment. (*Id.*) But Defendant provides no support for the proposition that either represent a *per se* violation, which would justify the relief Defendant now seeks. (*Id.*) As such, the argument is not properly lodged and need not be considered. *See U.S. v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015). For this

---

[6] Again, Defendant is charged with the destruction of records in a federal investigation (Counts 12, 13). (*See* Dkt. No. 1 at 13, 14.)

reason,[7] Defendant fails to establish the second *Barken* prong. *See* 412 F.3d at 1134.

Accordingly, both motions to dismiss (Dkt. Nos. 74, 78) are DENIED. This ruling has no bearing on Defendant's ability to make Rule 403 and 404(b) objections at trial.

### B. Discovery Motions (Dkt. Nos. 75, 77)

Defendant titled and described these motions, respectively, as a *Henthorn* request, (*see* Dkt. No. 75), and one seeking proffer information, (*see* Dkt. No. 77). Collectively, they are better described as the following requests to the Court (a) compel the Government to produce certain discovery, (b) compel the Government to affirmatively declare compliance with its discovery obligations, (c) and to perform *in camera* review of the Government's files to determine compliance with discovery obligations. (*See generally* Dkt. Nos. 75, 77.)

Collectively, these are requests for production and disclosure pursuant to, *inter alia*, *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (the Government must disclose exculpatory evidence within its possession); *Giglio v. U.S.*, 405 U.S. 150, 153 (1972) (the Government must disclose evidence in its possession regarding the credibility of a testifying witness); *U.S. v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991) (the Government must examine files of testifying officers and disclose resulting information favorable to the defense); and, perhaps, the Jenks Act, 18 U.S.C. § 3500 (the Government must produce a witness's statement prior to trial). (*See* Dkt. Nos. 75 at 2–3, 77 at 2–15, 96 at 2, 98 at 1–3.)

As a threshold matter, and as the Government notes, Defendant did not comply with LCR 12(b)(7). (*See* Dkt. No. 90 at 1.) Defendant does not contest this. (*See* Dkt. Nos. 96 at 2, 98 at 2.).

---

[7] Separately, the Government provides the Court with a litany of reasons why the indictment took as long as it did, including impacts from the COVID-19 pandemic, the needed review of voluminous records obtained through execution of the 2018 search warrant, and that the investigation originally targeted a different individual. (*See* Dkt. No. 87.) Defendant seems to suggest an evidentiary hearing is needed to test these assertions. (*See* Dkt. No. 99 at 3–4.) Because the Court finds that Defendant fails to establish both *Barken* prongs on a facial basis, the Government's assertions regarding contributing factors are irrelevant, negating the need for the Court to consider the evidentiary hearing which Defendant requests.

But even if Defendant had complied with the local rule(s), he fails to present the Court with tangible support for the notion that the Government is not complying with its discovery obligations. (*See generally* Dkt. Nos. 75, 96.) Instead, says Defendant, he makes the request to "make a record."[8] (*See* Dkt. Nos. 96 at 2, 98 at 2.) This is not a sufficient basis for the relief Defendant now seeks. Something more than speculation is required. *See, e.g., U.S. v. Frazier*, 203 F. Supp. 3d 1128, 1133 (W.D. Wash. 2016) (finding criminal discovery violation based on demonstrable evidence). Defendant may renew these requests, but only with something more than a speculative basis *and* with leave of the Court, if seeking to do so before trial.[9]

Accordingly, the discovery motions (Dkt. Nos. 75, 77) are DENIED without prejudice.

C. **Motion to Strike the Government's Expert (Dkt. No. 76)**

The Government retained an expert, Randall Lowell, to opine on "mortgages, mortgage modifications, and other matters relating to Defendant's conduct." (Dkt. No. 76-1 at 2.) Defendant moves to bar Mr. Lowell's testimony on the bases that portions are impermissible under Rule 704(b) and/or not in accordance with Rule 403. (*See generally* Dkt. No. 76.) Defendant also contends that the Government failed to comply with its Rule 16 obligation here, such that no portion of Mr. Lowell's testimony is permissible. (*See generally id.*)[10] None of the arguments are persuasive.

First, the Court is not convinced by Defendant's Rule 704(b) argument. The provision

---

[8] If anything, given the motions' lack of references to the unique facts and issues presented in this case, they appear to be no more than boilerplate efforts. (*See generally* Dkt. Nos. 75, 77.) The Court views this as an inappropriate use of the time of all involved in this matter and would appreciate a more tailored approach from Defendant's counsel to ensure a judicious use of the Court's time.

[9] The pre-trial motion deadline has lapsed, (*see* Dkt. No. 54), and the Court ordinarily entertains no further pre-trial motions.

[10] In his motion, Defendant also takes issue with supposed inappropriate legal opinion injected into the report. (*See* Dkt. No. 76 at 6–8.) But it appears he has conceded this point, as he did not reply to the Government's argument in opposition. (*See* Dkt. No. 91 at 8–11; *see generally* Dkt. No. 97.) Accordingly, the Court need not address this issue further. *See* LCrR 12(b)(4).

ORDER
CR22-0122-JCC-1
PAGE - 6

only bars expert opinions "about a particular person ('the defendant') and a particular issue (whether the defendant has 'a mental state or condition that is an element of the crime charged or of a defense')." *Diaz v. U.S.*, 144 S. Ct. 1727, 1733 (2024) (quoting Fed. R. Evid. 704(b)). Mr. Lowell's report contains no such opinion. (*See generally* Dkt. No. 76-1.) Rather, it is expert opinion regarding the mortgage industry and how Defendant's Everett call center and its practices aligned (or did not align) with those norms. (*Id.*) Courts routinely find this to be admissible. *See, e.g.*, *U.S. v. Kerley*, 784 F.3d 327, 340 (6th Cir. 2015) (allowing such testimony regarding "generally applicable standards in the lending industry"); *U.S. v. Spencer*, 700 F.3d 317, 321 (8th Cir. 2012) (allowing such testimony in a mortgage fraud case given the complexity of the industry and regulatory environment).

Second, as this Court previously indicated, *see supra* Section II.A.1., it will not make a prospective Rule 403(b) ruling. The context regarding evidence presented to date and the manner the evidence at issue is to be used is necessary for the Court to ascertain whether that evidence comports with Rule 403(b).

Third, Mr. Lowell's report (Dkt. No. 76-1) satisfies the Government's Rule 16 obligation(s). *See* Fed. R. Cr. P. 16(b). Defendant provides no authority for his position that the Government must provide bates-stamp cross-references in support of such a report, at least within the context of Rule 16(b). (*See generally* Dkt. Nos. 76, 97.) And the Court is aware of no such requirement. *See Aguilar*, 782 F.3d at 1108 (arguments not supported by legal authority are not properly lodged).

Accordingly, the motion to strike (Dkt. No. 76) is DENIED.[11] That denial is *without prejudice* solely with respect to re-raising the Rule 403(b) objection at trial.

---

[11] If the motion to strike is denied, Defendant asks for leave to designate a rebuttal expert. (*See* Dkt. No. 76 at 10.) While the request is short on argument and supporting facts, in the interests of affording Defendant every opportunity to defend against the crimes charged, the request is GRANTED.

D.     **Motion to Suppress and for a *Franks* Hearing (Dkt. No. 81)**

In March 2018, FBI agents executed a search warrant[12] at the Everett call center. (*See* Dkt. No. 81-1.) Defendant challenges the affidavit filed in support of the warrant application, (*id.* at 3 *et seq.*), asking the Court to conduct a *Franks* hearing. (*See generally* Dkt. No. 81.) At issue is allegedly exculpatory information regarding successful loan modifications and other benefits conferred to call center clients, later discussed in testimonial records now available to Defendant through discovery. (*See id.* at 3–9.) These details, according to Defendant, were not included in the affidavit and serve as the basis for the *Franks* hearing request. (*Id.*)

Indeed, under *Franks*, 438 U.S. at 134, a defendant is entitled to an evidentiary hearing on the validity of a search warrant affidavit if he can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

Defendant fails to make the required showing for either. He does not show that the affiant intentionally or recklessly withheld exculpatory information. The testimony which Defendant cites to, documenting the arguably exculpatory information, post-dates the affidavit by years. (*See* Dkt. No. 81 at 4–7) (citing Dkt. Nos. 81-2, 81-3). Perhaps the affiant and/or their colleagues had such knowledge at the time of the affidavit, but Defendant cites no authority for the notion that a *Franks* hearing is required, simply based on speculation that they may have. (*See* Dkt. Nos.

---

[12] The Fourth Amendment imposes several requirements for a valid search warrant. *United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015). This includes a magistrate's neutral and independent finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983). To justify issuing a search warrant for a particular place, the issuing magistrate is expected to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found." *Gates*, 462 U.S. at 238. "The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987). Probable cause is to be determined under the "totality of the circumstances." *Gates*, 462 U.S. at 238.

81 at 8–9, 102 at 2–5.) Again, absent tangible support (and none is offered here), this is not a properly lodged argument. *See Aguilar*, 782 F.3d at 1108. And, regardless, Defendant fails to show that inclusion of the information at issue might change the outcome. The affidavit, even with this allegedly omitted information, would still support a finding of probable cause based on the *inculpatory* information included, as outlined in the Government's sealed response brief.[13] (*See* Dkt. No. 88 at 10.)

Accordingly, the motion for a *Franks* hearing (Dkt. No. 81) is DENIED.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motions (Dkt. Nos. 74, 75, 76, 77, 78, 81) are DENIED, except as follows:

- The denials for Docket Numbers 75, 77, and the portion of Docket Number 76 seeking a 403(b) ruling, are without prejudice.
- Defendant may designate a rebuttal expert and produce the report within 14 days of this Order.[14]

DATED this 23rd day of August 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[13] To protect this confidential information from public disclosure, the Court refers to the Government's sealed brief containing the inculpatory information, adopting the Government's references to that information herein.

[14] The Court does not anticipate a change in the existing case management schedule based on the leave afforded above. If either party believes otherwise, they are directed to meet and confer and provide the Court with a joint submission with argument on the issue within 7 days of this Order.