THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>MOHAMMED ZAFARANCHI,<br><br>        Defendant. | CASE NO. CR22-0122-JCC-1<br><br>ORDER |

This matter comes before the Court on Defendant's motions for a new trial (Dkt. No. 247) and/or for a judgment of acquittal (Dkt. No. 246), along with Defendant's motion for leave to file overlength motions (Dkt. No. 245). Having thoroughly considered the briefing and the relevant record, and finding oral argument unnecessary,[1] the Court GRANTS the motion for leave to file overlength motions (Dkt. No. 245) and DENIES the substantive motions (Dkt. Nos. 246, 247) as described herein.

---

[1] Defendant asked for a briefing schedule expanding the deadlines for post-trial motions, which the Court granted. (*See* Dkt. Nos. 223, 224.) Thus, Defendant has had a full opportunity to submit argument and evidence in support of its requests. As such, no evidentiary hearing or oral argument is necessary. *See, e.g.*, *United States v. Sanft*, 2023 WL 5428065, slip op. at 1 (W.D. Wash. 2023), *aff'd*, 2024 WL 3963840 (9th Cir. 2024) (finding oral argument unnecessary on similar motions); *United States v. Mayers*, 2017 WL 2215805, slip op. at 1 (W.D. Wash. 2017) (same).

ORDER
CR22-0122-JCC-1
PAGE - 1

## I. BACKGROUND

In August 2022, a grand jury indicted Defendant for one count of conspiracy to commit wire fraud (count 1), five counts of wire fraud (counts 2–6), five counts of money laundering (counts 7–11), and one count of destruction of records in a federal investigation (count 12). (Dkt. No. 1 at 1–14.) Defendant proceeded to trial, where the jury found him guilty on all counts. (Dkt. No. 218 at 1–3.) In submitting post-trial motions, Defendant asks for a new trial. (*See generally* Dkt. No. 246.) He contends the Court erroneously excluded testimony from his expert witness (while allowing unfairly prejudicial testimony from the Government's expert witness). (*See id.* at 3–13.) Defendant also argues the following: that the Government knowingly used false testimony, that the Court erred in admitting evidence of acts from uncharged conspiracies, and that the verdicts on all counts were against the weight of the evidence.[2] (*See id.* at 13–22.) Defendant separately seeks a judgment of acquittal. (*See generally* Dkt. No. 247.) Primarily, he suggests that the Government presented insufficient evidence to prove wire fraud's requisite interstate nexus (counts 2–6) or to convict him of obstruction (count 12). (*See id* at 14–20.) The Court addresses each in turn.

## II. DISCUSSION

### A.   Leave to File Oversized Post-Trial Motions (Dkt. No. 245)

As a preliminary matter, Defendant seeks leave for his oversized post-trial motions. (Dkt. No. 245.) Considering the scope and scale of the arguments proffered, (*see* Dkt. Nos. 246, 247), the Court sees good cause for Defendant's request. Thus, the Court GRANTS Defendant's motion for leave to file overlength motions (Dkt. No. 245).

### B.   Rule 33(a) Motion for New Trial (Dkt. No. 246)

Rule 33 allows for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, such a motion "should be granted only in exceptional cases in which the

---

[2] Defendant also argues that cumulative error warrants a new trial. (*See* Dkt. No. 246 at 21–22.) Because the Court finds (below) that it committed no error, it need not address this argument.

evidence preponderates highly against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). The overriding concern on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. Fed. R. Civ. P. 33. Thus, as a starting point, the Court must weigh the evidence presented and evaluate for itself the witnesses' credibility. *See United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992). Then, if it concludes that the evidence weighs "sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). As described below, Defendant fails to meet this standard and thus cannot establish that a new trial is required.

          1.    <u>Expert Testimony</u>

In seeking a new trial, Defendant first takes issue with the Court's pretrial exclusion, (*see* Dkt. No. 172), of Defendant's expert witness, Jack Cohen. (*See* Dkt. No. 246 at 3–6.) Defendant sought to have Mr. Cohen opine on the Everett call center's compliance with mortgage modification and marketing industry norms and standards, in rebuttal to the Government's anticipated expert regarding the same. (*See* Dkt. No. 145 at 4.) Nevertheless, the Court barred Mr. Cohen's testimony because he lacked the requisite specialized knowledge to opine on such issue(s). (*See* Dkt. No. 172 at 4.) Defendant contends this was error in that it exceeded the bounds of *Daubert's* [3] gatekeeping function and only magnified the Court's separate error of allowing in unduly prejudicial (and unrebutted) testimony from the Government's expert, Randall Lowell. (*Id.* at 4–5.) The argument is not well taken.

According to Mr. Cohen's curriculum vitae ("CV"), he has no specialized mortgage modification training, experience, or knowledge. (*See* Dkt. No. 145-1 at 19–20.) And his report contained only generalized representations of industry norms supported solely by his personal observations. (*See id.* at 4–17.) Thus, it lacked a discussion of or reference to objective sources, such as the regulatory authorities governing the Everett call center. *See United States v. Holmes*,

---

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

2021 WL 2035177, slip op. at 4 (N.D. Cal. 2021) (describing the relevance of expert testimony when opining on industry standards and the regulatory framework in a wire fraud case). Mr. Cohen's CV and report also failed to demonstrate his specialized knowledge or experience in advertising and marketing techniques more generally. (*See* Dkt. No. 145-1 at 19–20.) Thus, Mr. Cohen's testimony appeared neither relevant nor reliable and could not have assisted the trier of fact, so the Court properly excluded it under Rule 702(a).

Defendant next suggests, irrespective of the exclusion of Mr. Cohen's testimony, that in accordance with Federal Rules of Evidence 403 and 704 (the latter being implied), the Court *should* have excluded Mr. Lowell's testimony. (*See* Dkt. No. 246 at 7–16.) But Mr. Lowell is an undisputed industry expert. (*See generally* Dkt. No. 76.) And during trial, he testified at length regarding the industry standards, regulatory framework, and guidance governing and informing mortgage modifications and related services. (*See* Dkt. No. 239 at 11–125.) The Court concluded that this was admissible because it would assist the jury in determining whether Defendant, vis-à-vis the Everett call center, solicited modification services to the public with the intent to "devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." (Dkt. No. 210 at 21); *see, e.g.*, *United States v. Unruh*, 855 F.2d 1363, 1375 (9th Cir. 1987); *United States v. Strange*, 23 F. App'x 715, 717 (9th Cir. 2001). Nevertheless, to ensure that the jury considered Mr. Lowell's testimony for the appropriate purpose, it instructed the jury on how it should utilize Mr. Lowell's testimony both during the course of trial and at close of evidence. (*See* Dkt. Nos. 210 at 17, 239 at 46, 61.) "A jury is presumed to follow [the Court's] instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Thus, the Court committed no error in barring Mr. Cohen's testimony but allowing Mr. Lowell's testimony.

    2.    <u>Alleged False Testimony</u>

Defendant next suggests that the Government offered known false testimony through the

deposition of its unavailable witness, Spencer Martin. (*See* Dkt. No. 246 at 16–19.) If so, this would be a violation of Defendant's due process rights, as articulated in *Napue v. Illinois*, 360 U.S. 264 (1959). (*Id.*) (citing *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025)). To prevail on such an assertion, Defendant bears the burden of showing that the Government's: "(1) testimony (or evidence) was actually false, (2) the [Government] knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material." *Dickey v. Davis*, 69 F.4th 624, 636 (9th Cir. 2023).

Here, Defendant fails to establish any, much less all three, of these prongs. First, Defendant does not point to specific testimony within the offered deposition that was false; instead, he makes a generalized assertion that Mr. Martin's testimony was "false and evasive." (Dkt. No. 246 at 18.) Second, Defendant provides no support for the notion that the Government knew Mr. Martin's testimony was untrue. (*See id.* at 17–19.) Third, Defendant fails to establish the testimony was, in fact, material. (*Id.*) Regardless, it was Defendant—not the Government—who designated the portion of Mr. Martin's testimony offered to the jury that Defendant now takes issue with, *e.g.*, assertions that Mr. Martin "stonewall[ed]" and "feigned [an] inability" to answer, (*id.* at 17–18). (*See* Dkt. No. 109-2 at 5–18, 24–37.)

For all these reasons, Defendant cannot establish a *Napue* due process violation.

### 3.    Uncharged Conduct

Defendant next suggests the Court committed error by admitting evidence related to Defendant's role in the uncharged California call center schemes. (Dkt. No. 246 at 19.) By way of review, the Government alleged that Defendant largely replicated business practices he first utilized in California at the Everett call center and then supported the Everett call center from California. (*See* Dkt. No. 93 at 4–5.) For this reason, the Court ruled that evidence regarding California activities was admissible in this matter as necessary context for Defendant's Everett activities. (*See* Dkt. No. 104 at 2–3.)

Defendant now seeks to relitigate this ruling, focusing on two things: (1) the

1  Government's repeated references during trial to Sienna Support Network ("SSN"), one of
2  Defendant's California-based call centers and (2) evidence introduced at trial that modification
3  files, once complete, would be sent to a California location for further processing. (*See* Dkt. No.
4  246 at 19–20.) But the indictment referenced SSN *14 times*, including under the charges for
5  conspiracy to commit wire fraud, wire fraud, and destruction of records in a federal
6  investigation. (*See generally* Dkt. No. 1.) Thus, it is part of the charged conspiracy. And any
7  other California-based activity evidence, such as where modification files were processed "is *res*
8  *gestae* evidence, *i.e.*, needed context for the finder of fact" (as the Court previously ruled). (Dkt.
9  No 104 at 3.)

10  The Court did not commit error before or during trial in addressing the import of the
11  California activities.

12      4.    <u>Weight of the Evidence</u>

13  Finally, Defendant contends the verdicts are against the weight of the evidence. (Dkt. No.
14  246 at 13–16.) In support, Defendant points to evidence that others were also involved and that,
15  particularly for the Everett call center, Defendant's day-to-day role was less than others. (*Id.*)
16  Defendant also retreads an argument he made during his Rule 29(a) motion, (*see* Dkt. Nos. 200
17  at 5–8, 206 at 1), and again in his Rule 29(c) motion, (*see* Dkt. No. 247 at 14–18), discussed
18  further below, regarding satisfaction of the interstate element for the crime of wire fraud. (*Id.*)
19  But the Government offered unrebutted evidence both as to Defendant's role in the Everett call
20  center, as well as the interstate element for the resulting crimes. (*See, e.g.*, Dkt. Nos. 236 at 87–
21  192; 237 at 4–246; 238 at 4–47, 122–98; 239 at 4–11; 240 at 3–223.)

22  This is sufficient to convict Defendant on the charged crimes.

23    **C.**    **Rule 29(c) Motion for Judgment of Acquittal (Dkt. No. 247)**

24  The standard for a Rule 29(c) motion is more taxing than that of a Rule 33(a) motion. *See*
25  *United States v. Navarro Viayra*, 365 F.3d 790, 793 (9th Cir. 2004) (comparing the standard for
26  each). Having ruled against Defendant's Rule 33(a) motion, the Court will, nevertheless, address

the Rule 29(c) motion. For Defendant to succeed, the Court would need to find that, viewing the evidence in the light *most favorable to the Government*, a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010). In support of this proposition, Defendant (1) focuses on the issue raised during trial and briefly above, namely, whether the Government presented sufficient evidence of interstate nexus for each of the wire fraud counts, and (2) whether there was sufficient trial evidence for the obstruction charge (count 12). (*See* Dkt. No. 247 at 14–20.) Neither argument is persuasive.[4]

### 1.  Wire Fraud—Interstate Nexus

The indictment charged Defendant with wire fraud in accordance 18 U.S.C. § 1343 (counts 2–6). (Dkt. No. 1 at 11.) To convict, the jury must find that the defendant used an interstate wire. *See* 18 U.S.C. § 1343; *United States v. Jinian*, 725 F.3d 954, 964–65 (9th Cir. 2013). Or as the Court instructed the jury here, that "the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme." (Dkt. No. 210 at 21) (Ninth Cir. Manual of Model Criminal Jury Instructions No. 15.35 (2022) (last updated June 2025)). "An interstate wire communication includes a wire transmission so long as it goes across a state line." *Jinian*, 725 F.3d at 965. The interstate requirement is jurisdictional, not substantive, so it has no intent requirement. *United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011). Defendant contests whether the Government's evidence was sufficient to satisfy this jurisdictional requirement.

Counts 2, 3, and 5 relate to financial wires. (Dkt. No. 1 at 11–12.) In support, the Government called an FBI forensic accountant, Jared Young. (*See* Dkt. No. 238 at 145–49.) He testified that these transmissions originated in California, Ohio, and Florida, respectively, and SSN's office in Everett, Washington then received them. (*See id.*) He also identified client

---

[4] For this reason, Defendant's arguments as to conspiracy to commit wire fraud (count 1) and/or money laundering (counts 7–11) must also fail. (*See* Dkt. No. 247 at 18 n.10.)

records for each of those three senders to confirm they were victims of Defendant's scheme. (*See id.*) The Government also called a 17-year Wells Fargo employee, Jonathan Gillespie, knowledgeable about how the bank processes wire transactions. (*See* Dkt. No. 239 at 4–5.) He testified that, assuming a wire transmission comes from a customer of a different bank, that transfer would have to go through Wells Fargo's servers in Alabama or Minnesota. (*Id.* at 5–6.) He further testified that the transmissions at issue in counts 2, 3, and 5 all came from different banks. (*Id.*) This evidence further supports a reasonable inference that victims from California, Ohio, and Florida sent money via interstate wires, which passed through Wells Fargo servers in Alabama or Minnesota, to SSN's account(s) located in Everett, Washington, establishing an interstate nexus.[5]

Counts 4 and 6 relate to e-mails. (Dkt. No. 1 at 11–12.) Two Government witnesses, Josh Herrera and Jessica Mabry, testified about them. (*See* Dkt. No. 237 at 19–20, 167–68.) Ms. Mabry testified that she sent the e-mails from the Everett, Washington office to an e-mail address she understood Defendant controlled in California: newportcenter2016@gmail.com. (*See* Dkt. No. 237 at 167–68.) Defendant verified in a text message that the e-mail address was his. (*See* Dkt. No. 225-1 at 203.) And Mr. Herrera testified that when Ms. Mabry sent the e-mails, he and Defendant were located in California. (Dkt. No. 237 at 19–20.) This evidence supports a reasonable inference that Ms. Mabry sent relevant e-mails from Washington to Defendant while

---

[5] Defendant argues that because the Government did not admit evidence that the transmissions used Fedwire specifically, then the Government's evidence is insufficient as a matter of law. (*See* Dkt. No. 247 at 3–7.) This argument is illogical, because it conflates evidence of a <u>sufficient</u> condition (use of Fedwire) with evidence of a <u>necessary</u> condition. Defendant also relies on *United States v. Golightley*, 840 F. App'x 319 (10th Cir. 2020) to argue the jury could not reasonably infer an interstate nexus for the wire fraud counts. (Dkt. No. 247 at 12–14.) But the case is inapt. For one, *Golightley* is not even a wire fraud case, nor is it binding authority, and the factual difference between that case and this one with respect to an interstate nexus is obvious. *See* 840 F. App'x at 323–25. There was no evidence in that case of *interstate* threats—they all originated and were received within Kansas. *Id.* at 323–24.

he was in California, providing a basis for an interstate nexus for counts 4 and 6.[6]

Collectively, this evidence is sufficient to support the interstate nexus for the wire fraud counts.

### 2. Obstruction

The indictment also charged Defendant with destruction of records in a federal investigation pursuant to 18 U.S.C. §§ 1519 and 2 (principals relating to aiding in or otherwise causing a crime) (count 12). (Dkt. No. 1 at 13–14.) This pertains to Defendant's deleting of three e-mail accounts and his attempts to cause others to destroy records following an FBI raid of the Everett call center. (*Id.*) "In order to prove a violation of [18 U.S.C.] § 1519, the Government must show that the defendant (1) knowingly committed one of the enumerated acts in the statute, such as destroying or concealing; (2) towards 'any record, document, or tangible object'; (3) with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction." *United States v. Singh*, 979 F.3d 697, 715 (9th Cir. 2020).

According to testimony from FBI Special Agent Andrew Cropcho, he obtained records from Google showing that three accounts associated with Defendant were deleted approximately 12 hours after the FBI executed a search warrant at the Everett office. (Dkt. No. 238 at 21.) And one of the three deleted accounts was the newportcenter2016@gmail.com discussed above (which Defendant confirmed was his). (*See id.*) The Government also offered testimony from Mark Lezama, who indicated that, after the FBI searched the Everett office, Defendant advised Mr. Lezama to delete records from his phone, and Defendant indicated that he would do so the

---

[6] Defendant also argues that, because the Government did not provide evidence at trial that the e-mail servers were located in different states, there was insufficient evidence of the required interstate nexus. (*See* Dkt. No. 247 at 17.) He cites several authorities: *Golightley*, 840 F. App'x 319, which the Court addressed above, *see supra* n. 5, as well as *SEC v. Straub*, 921 F. Supp. 2d 244, 246, n.13 (S.D.N.Y. 2013), and *United States v. Baker*; 2014 WL 3007691, slip op. at 2 (W.D. Tex. 2014). (*See* Dkt. No. 247 at 17.) But *Straub* and *Baker* suffer from the same defect: they are examples of the Government meeting a *sufficient* condition for a jurisdictional nexus, which does not support Defendant's argument that the Government failed to meet a *necessary* condition for an interstate nexus here.

same day. (Dkt. No. 240 at 190–91.)

While the Government presented more evidence at trial on the issue, this alone supports a reasonable inference that Defendant (a) deleted at least one e-mail account in an effort to avoid detection by authorities and (b) advised an associate to delete records. This is sufficient to support the obstruction count.

### III.   CONCLUSION

For the foregoing reasons, the Court finds good cause for Defendant's procedural post-trial motion (Dkt. No. 245) and GRANTS that motion. But it finds Defendant's substantive post-trial motions (Dkt. Nos. 246, 247) to be meritless. Those motions are DENIED.

DATED this 20th day of October 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
CR22-0122-JCC-1
PAGE - 10