THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR22-0122-JCC-1 |
| Plaintiff, | ORDER |
| v. | |
| MOHAMMED ZAFARANCHI, | |
| Defendant. | |

This matter comes before the Court on the Government's motion for entry of an order of restitution as to Defendant Mohammed Zafaranchi (Dkt. No. 299). Having thoroughly considered the briefing and relevant record, and finding a hearing on the matter unnecessary, the Court ORDERS restitution in the amount of $2,151,338.04 as to Mr. Zafaranchi as explained herein.

## I.   BACKGROUND

In the indictment, the Government alleged that Mr. Zafaranchi, along with cooperating defendants Mark Lezama and Josh Herrera, ran an Everett-based call center which fraudulently induced payments from distressed homeowners. (*See generally* Dkt. No. 1.) In exchange for their payments, the homeowners thought they were likely to receive highly favorable mortgage modifications based on efforts of the Everett call center's purported underwriters, lawyers, and mortgage professionals. (*Id.*) Instead, at best, the homeowners received a mortgage modification

ORDER
CR22-0122-JCC-1
PAGE - 1

which they could have easily attained through their own efforts, based on the provision of minimal services from the Everett call center's underqualified employees. (*Id.*) At worst, many homeowners received no modification, due to the center's advice that they should stop paying on their delinquent mortgages, and lost their home(s) to subsequent foreclosure. (*Id.*)

Mr. Zafaranchi was charged with Conspiracy to Commit Wire Fraud, five counts of Wire Fraud, five counts of Money Laundering, and Destruction of Records in a Federal Investigation. (*See* Dkt. No. 1.) Mr. Lezama and Mr. Herrera pled guilty to Conspiracy to Commit Wire Fraud and were sentenced by this Court to custodial terms. *See United States v. Edwin Hererra Rosales*, Case No. CR21-0001-JCC, Dkt. Nos. 13, 45 (W.D. Wash. 2025); *United States vs. Mark Alfredo Lezama*, Case No. CR22-0122-JCC-2, Dkt. Nos. 71, 292 (W.D. Wash. 2025). Mr. Zafaranchi exercised his right to trial, where a jury convicted him on all charges. (*See* Dkt. No. 218.) The Court then sentenced him to a custodial term. (*See* Dkt. No. 269.)

At the time of sentencing, the Government sought restitution under the Mandatory Victims Restitution Act ("MVRA") 18 U.S.C. §§ 3663–64. (*See generally* Dkt. No. 299.) The MVRA provides that a court may provide restitution to a victim of such crimes. 18 U.S.C. § 3663(a)(1)–(2). If so, the court determines the appropriate amount based on the preponderance of the evidence presented to it. *Id.* § 3664(e).

The Court initially referred the matter as to all three defendants to the Honorable Michelle L. Peterson, United States Magistrate Judge, in accordance 18 U.S.C. § 3664(d)(6). Mr. Hererra and Mr. Lezama later agreed to the entry of a restitution order, which the Court entered and incorporated into their amended criminal judgment(s). *See Hererra*, Case No. CR21-0001-JCC, Dkt. Nos. 57, 59, 60; *Lezama*, Case No. CR22-0122-JCC-2, Dkt. Nos. 303, 305, 308. However, Mr. Zafaranchi challenged the Government's proffered restitution amount. (*See* Dkt. No. 295.) Nevertheless, once the issue(s) were briefed, it became clear to this Court that the remaining contested issues are legal rather than factual. (*See* Dkt. Nos. 299, 306, 307.) Thus, the

ORDER
CR22-0122-JCC-1
PAGE - 2

Court terminated the referral to Judge Peterson.

The Court addresses each contested issue below, and then makes findings and conclusions necessary to support a $2,151,338.04 restitution judgment against Mr. Zafaranchi.

## II.    DISCUSSION

### A.    Legal Standard

The Court may order restitution based on a victim's total losses and the defendant's financial resources. 18 U.S.C. § 3663(a)(1)(B)(i). Such restitution must be for the full loss directly related to the defendant's conduct. *Id.* § 3664(f)(1)(A). This includes costs that are a "direct and foreseeable result" of a defendant's misconduct. *United States v. Waknine*, 543 F.3d 546, 558 (9th Cir. 2008). It is the Government's burden to prove a victim's losses by a preponderance of the evidence. 18 U.S.C. § 3664(e). The Government's submissions may include affidavits, itemized lists, or other financial documentation. *See Waknine*, 543 F.3d at 557. A court that orders restitution must explain its reasoning as supported by the record before it. *United States v. Mehmood*, 829 F. App'x 203, 205 (9th Cir. 2020) (citing *Waknine*, F.3d at 556–57).

### B.    *Ellingburg* is of No Import

Defendant first contends that the Supreme Court's holding in *Ellingberg* (finding restitution to be a criminal penalty for purposes of the *Ex Post Facto* Clause) invalidates that portion of the MVRA which directs the Court (rather than a jury) to make factual findings supporting a restitution sanction. (Dkt. No. 306 at 2–7) (citing *Ellingburg v. United States*, 146 S. Ct. 564 (2026); *Southern Union Co. v. United States*, 567 U.S. 343 (2012)). Thus, according to Mr. Zafarnachi, under the Sixth Amendment, all facts supporting restitution must come from the jury. (*Id.*) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). But this is not the end of the story.

Indeed, the Supreme Court did hold in *Ellingburg* that restitution is a "criminal punishment." 146 S. Ct. at 567–69. And *Apprendi* does provide that certain facts supporting a

criminal penalty must be "submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. However, Mr. Zafaranchi's argument misinterprets *Apprendi*, whose reach is limited to penalties imposed "beyond the prescribed statutory maximum." *Id.*

Meaning, *Apprendi* applies only to *determinate* punishments. Restitution has no statutory maximum. *See* 18 U.S.C. § 3664(f)(1)(A). Thus, the MVRA is an "indeterminate framework" for imposition of restitution. *United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012); *see United States v. Reifler*, 446 F.3d 65, 118–20 (2d Cir. 2006) (describing the MVRA for such purposes as "an indeterminate system"). Fundamentally, *Apprendi* has no import here. This is the view of the Ninth Circuit and all others to have addressed the issue. *See United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013); *see, e.g.*, *United States v. Milkiewicz*, 470 F.3d 390, 403–04 (1st Cir. 2006); *United States v. Churn*, 800 F.3d 768, 782 (6th Cir. 2015). And because *Apprendi* has no import, neither does *Ellingburg*.

Thus, the Court will apply all aspects of the MVRA to its determination of restitution here.

**C.      The Government's Evidence is Adequate**

Mr. Zafaranchi next argues that the Government's evidence is insufficient for it to meet its burden. (*See* Dkt. No. 306 at 7–12.) Specifically, says Mr. Zafaranchi, the Government fails to establish what Everett call center conduct induced each victim to remit amounts to it and ignores the value of the services some victims may have ultimately received. (*Id.*) This argument ignores the evidence and controlling authority.

As to the evidence, the Government proffers FBI Forensic Accountant Jared Young's declaration. (Dkt. No. 300.) Based on his analysis of the Everett call center's banking records and the $2,746,329.36 in deposits to it over the course of the conspiracy, Mr. Young identified at least $2,151,338.04 in restitution owed to 899 victims. (*See* Dkt. No. 300-1.)[1] In addition, the

---

[1] This amount represents the fees paid by each of these victims supported by documentation. That documentation takes the following forms: (1) Everett call center deposits directly traceable through banking records to a particular victim, (2) cash and other non-traceable deposits

ORDER
CR22-0122-JCC-1
PAGE - 4

Court notes the trial evidence established that all deposits into the Everett call center's account represented customers/victims' fees. (*See, e.g.*, Dkt. No. 237 at 35.) And the Everett call center made the *same exact* fraudulent inducement to each prospective customer throughout the solicitation process to garner that payment. (*See, e.g.* Dkt. No. 236 at 93, 162.)

As to the law, a fraud conviction does not require a particularized showing of reliance. *See United States v. Williams*, 492 F. App'x 777, 778 (9th Cir. 2012) (citing *Neder v. United States*, 527 U.S. 1, 25 (1999)). Nor would there be an allowable offset for services rendered against money that was fraudulently obtained. *United States v. Hunter*, 618 F.3d 1062, 1064–65 (9th Cir. 2010). Thus, Mr. Zafaranchi's legal arguments are meritless.

The Government showed, through trial evidence, that each victim was induced to make payments to the Everett call center based on deceptive and/or untrue promises as to the services they would receive and the likely results. (*See, e.g.*, Dkt. Nos. 236 at 87–192; 237 at 4–246; 238 at 4–47, 122–98; 239 at 4–11; 240 at 3–223.) And Mr. Young reasonably traced $2,151,338.04 in payments, deposited to the Everett call center's bank account, as to 899 specific victims.

### D.    Procedural Compliance with the MVRA

Mr. Zafaranchi also contends the Court failed to comply with the MVRA because the presentence investigation report ("PSR") did not detail the victims and amounts subject to restitution. (Dkt. No. 306 at 12–14.) Again, the argument misses the mark. This is only required "to the extent practicable." 18 U.S.C. § 3664(a).

Given the number of victims and the lack of accounting here—Mr. Zafaranchi was convicted of obstruction of justice—this level of detail was not possible. Thus, the PSR indicated the amount would still need to be determined. (*See* Dkt. No. 258 at 9, 17.) In fact, when lodging objections to the PSR, Mr. Zafaranchi agreed. (*See* Dkt. No. 262 at 16.) And once the case was

---

associated with a victim's payment plan and/or documentation provided by that victim, and (3) additional payments from a victim according to their sworn affidavit so long as they also had traceable or associated deposits per above (most of the victims' payment plans required three installments). (*See* Dkt. No. 300 at 2–5.)

ORDER
CR22-0122-JCC-1
PAGE - 5

referred to her, Judge Peterson issued a scheduling order compliant with the MVRA to do so. (*See* Dkt. No. 296.) Admittedly, this Court struck the suggested hearing but only once it became clear that there was no need for one. Regardless, this order issues within 90 days from sentencing, as required by 18 U.S.C. § 3664(d)(5). Thus, there is no procedural irregularity.

In sum, the Court has fully complied with the MVRA. Regardless, even if Mr. Zafaranchi had put procedural compliance at issue, the Ninth Circuit provides that such an error is insufficient to warrant reversal, absent prejudice. *See United States v. Moreland*, 622 F.3d 1147 (9th Cir. 2010). Mr. Zafaranchi articulates no such prejudice. (*See generally* Dkt. No. 306.)

### E.    Complexity

Finally, Mr. Zafaranchi asks the Court to find that the determination of restitution is too complex to take on, in accordance with 18 U.S.C. § 3663A(c)(3). This argument is belied by the analysis above. The Court will not address it any further.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion (Dkt. No. 299) and makes the following resulting findings of fact and conclusions of law:

Findings of Fact

1.    Mr. Zafaranchi (and other defendants) operated a call center that used the names "Sound Solutions Group," "Community Assistance Center," and "Sienna Support Network" (the "Everett call center") from 2016 to 2018.

2.    At the defendants' direction, the Everett call center defrauded homeowner customers, by, amongst other things, falsely representing that (a) it was comprised of experienced, highly trained mortgage modification specialists and professionals who would provide services on the homeowners' behalf in return for a fee, and (b) homeowners had been approved for favorable mortgage modifications.

3.    Any individual who paid a fee to the Everett call center was directly harmed by the scheme or conspiracy that gave rise to Mr. Zafaranchi and other defendants' convictions

ORDER
CR22-0122-JCC-1
PAGE - 6

because the Everett call center did not have the expertise those homeowners paid for and homeowners did not receive the represented services or results.

4.    The restitution loss analysis conducted by Mr. Young, as detailed in his declaration and exhibit, is a credible analysis of the number of individuals who paid a fee to the Everett call center and the amount of those fees.

5.    At least 899 individuals paid a fee to the Everett call center. Those 899 individuals and the amount of fees they paid are identified in Mr. Young's exhibit.

6.    Any individual who paid a fee to the Everett call center suffered actual losses in the full amount of the fee paid to the Everett call center.

7.    The 899 individuals who paid a fee to the Everett call center paid a total of $2,151,338.04 in fees.

Conclusions of Law

1.    The restitution loss analysis conducted by Mr. Young—and the information Mr. Young relied on in reaching the conclusions outlined in his declaration—"possesses sufficient indicia of reliability" to support the Government's restitution request. *See Waknine*, 543 F.3d at 557.

2.    The Government has proven by a preponderance of the evidence that the 899 individuals identified in Mr. Young's exhibit are "victims" under the MVRA.

3.    The Government has proven by a preponderance of the evidence that the 899 individuals identified in the exhibit suffered a total of $2,151,338.04 in actual losses. The exhibit itemizes the specific amount of loss suffered by each victim.

4.    The victims identified in the exhibit are entitled to restitution in the amounts listed on the exhibit, for a total amount of $2,151,338.04 in restitution owed by Mr. Zafaranchi and other defendants.

5.    Each defendant, including Mr. Zafaranchi, is liable for the payment of the full amount of restitution.

Accordingly, the Court ORDERS restitution as to Mr. Zafaranchi in the amount of $2,151,338.04 and DIRECTS the Government to submit a proposed amended judgment consistent with the terms of this order.

ORDER
CR22-0122-JCC-1
PAGE - 7

DATED this 9th day of March 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
CR22-0122-JCC-1
PAGE - 8